ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANITA KNIGHT,

    Plaintiff,

-vs-

UPPER MANHATTAN MENTAL
HEALTH CENTER, INC.,

    Defendant.
-----------------------------------------------------X

13 CV 9184

**COMPLAINT**

**JURY TRIAL DEMANDED**

JUDGE KARAS

## I  INTRODUCTION

1. Plaintiff Anita Knight brings this action under the Americans with Disabilities Act of 1990, *as amended*, the New York City Human Rights Law and the New York State Human Rights Law. Plaintiff challenges her unlawful termination from defendant's employment on account of her protected disability. As a consequence of plaintiff's termination, she has suffered pain and suffering and lost wages and benefits.

## II  PARTIES

2. Plaintiff is a woman who resides in Middletown, New York, within this judicial district. At all times relevant to this case, plaintiff resided in The Bronx, also within this judicial district.

3. Defendant is a mental health care facility located in the County of New York, within this judicial district. At all times relevant to this action, defendant employed more than 15 persons.

## III JURISDICTION AND VENUE

4. As plaintiff brings this action under the Americans with Disabilities Act, this Court has subject matter jurisdiction under 42 U.S.C. § 12101 *et seq.* and 28 U.S.C. §§ 1331 and 1343 (3) & (4).

5. On November 18, 2009, plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that defendant discriminated against her on account of disability and retaliation.

6. On January 29, 2013, the EEOC found probable cause to believe that defendant violated the Americans with Disabilities Act.

7. After the parties were unable to conciliate, the EEOC issued a Right to Sue letter dated October 31, 2013, postmarked November 1, 2013 and which plaintiff received on November 4, 2013. As this action is filed within 90 days of plaintiff's receipt of the Right to Sue letter, this action is timely.

8. This Court has subject matter jurisdiction under the New York City Human Rights Law and the New York State Human Rights Law pursuant to 28 U.S.C. § 1367.

## IV STATEMENT OF FACTS

9. Plaintiff is disabled under the federal, state and city anti-discrimination laws. Approximately 20 years ago, plaintiff was diagnosed with Post-Traumatic Stress Disorder, for which she has received treatment. Plaintiff also has an anxiety and panic disorder, which was diagnosed in August/September 2009.

10. Since 2009, plaintiff's mental health issues have substantially limited the major life activities of sleeping, working, concentrating, thinking and interacting with

2

others.

11. Plaintiff commenced working for defendant in February 2008 as a Unit Administrative Assistant in the Intake/Emergency Unit, reporting to the Director of Adult Services.

12. Plaintiff was responsible for supervising eight to ten employees, including those in the Adult Outpatient, Elderly and Intake departments. At all times during her employment with defendant, plaintiff satisfactorily performed her job duties.

13. On July 29, 2009, when plaintiff left work at 5:00 p.m., she felt herself shaking uncontrollably and thought that she had suffered a stroke. In fact, plaintiff had suffered a panic attack.

14. The following morning, plaintiff felt numbness on the left side of her body and she went to the doctor, who suggested that plaintiff had suffered a panic attack. On July 30, 2009, Dr. Naz Khan faxed a letter to defendant that stated as follows:

> Ms. Knight receives her medical care at Fordham Family Practice. Due to her current medical condition, she has been advised rest and time off from work until Friday August 14th, 2009. Her return back to work date is August 17th, 2009.

15. In its response to plaintiff's EEOC charge, defendant acknowledged that plaintiff "submitted" Dr. Khan's July 30, 2009 note.

16. Over the course of the next two weeks, plaintiff's panic disorder did not subside. When plaintiff again saw her doctor on August 14, 2009, she referred plaintiff to a psychologist. On that date, Dr. Kahn faxed a letter to defendant that stated as follows:

3

> Ms. Knight is under my medical care at present. Due to her current mental health, she has been advised to seek psychotherapy and behavioral therapy from a trained psychologist who specializes in the required field. Due to her current condition, she has been advised to refrain from work temporarily, until she is evaluated and treated by a psychologist, who will then advise her of the ability to return back to work.

17. On August 20, 2009, defendant mailed to plaintiff forms that would allow her to recover New York State disability benefits. Plaintiff completed the forms and sent them to defendant on September 10, 2009. In filling out the form, plaintiff's doctor stated that plaintiff suffered from post-traumatic stress disorder and generalized anxiety. After stating that he had been treating plaintiff for this disability since July 29, 2009, the doctor estimated that plaintiff could return to work by October 30, 2009.

18. On September 16, 2009, defendant signed off on the disability forms and submitted the application on plaintiff's behalf.

19. In signing and submitting the disability form on her behalf, defendant knew that plaintiff suffered from a protected disability and that she could return to work on October 30, 2009.

20. However, on October 7, 2009, defendant terminated plaintiff's employment. Lawrence Fowler, defendant's Administrator, wrote that "[t]his action is being taken because your department can no longer hold the position which you have vacated since July 29, 2009."

21. In opposition to plaintiff's EEOC charge, defendant stated that, after it mailed the

4

disability forms to plaintiff, "[i]t was only after providing the information requested to Ms. Knight and her failure to communicate with the employer, did the employer terminate her services. Ms. Knight vacated her position with the Center. Since August 26, 2009, Ms. Knight has not communicated with her employer necessitating her separation from employment."

22. In fact, by October 7, 2009, defendant knew that plaintiff did not abandon her employment because it had signed off on her application for temporary disability benefits on September 16, 2009, which estimated that she could return to work by October 30, 2009.

23. As her doctor had suggested in completing the disability benefits form, plaintiff was able to resume work. On October 27, 2009, plaintiff's doctor, John V. Abbott, Jr., M.D., prepared a note for plaintiff that stated she could "return to work at your usual occupation."

24. In terminating plaintiff, defendant made no attempt to reasonably accommodate her disability or initiate the interactive process under the Americans with Disabilities Act. Instead, defendant terminated plaintiff's employment even though it knew she was out on temporary sick and was estimated to return to work by late October 2009.

25. On January 29, 2013, following an investigation, the EEOC issued a "probable cause" finding that defendant had discriminated against plaintiff in violation of the Americans with Disabilities Act.

26. At the time of her termination from employment, plaintiff was earning

approximately $40,000 per year with benefits.

27. Since her unlawful termination, despite her diligent search efforts, plaintiff has been unable to find comparable employment.

28. As a consequence of her unlawful discharge, plaintiff has suffered pain and suffering, anxiety and humiliation. She also had to relinquish her apartment in the Bronx because she was unable to pay the rent following her termination. As a consequence of her termination, plaintiff ultimately had to move to Connecticut and live with a friend for approximately seven months until she and her husband were able to find affordable housing in Middletown, New York.

## V CAUSES OF ACTION

29. Plaintiff incorporates the allegations in ¶¶ 1-28 as if fully restated herein.

30. In terminating plaintiff's employment because of her protected disability, defendant violated the Americans with Disabilities Act of 1990, *as amended*, the New York City Human Rights Law and the New York State Human Rights Law.

## VI PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this action;

b. empanel a jury to hear and decide plaintiff's claims

c. award to plaintiff lost wages and in the form of back pay and front pay;

d. award to plaintiff punitive damages under the Americans with Disabilities Act and the New York City Human Rights Law;

e. award to plaintiff reasonable attorneys' fees and costs expended in litigating this

action;

    f. and award to plaintiff such other relief deemed just and proper.

Dated:    December 30, 2013

                                         Respectfully submitted,

                                         STEPHEN BERGSTEIN

                                    BERGSTEIN & ULLRICH, LLP
                                            15 Railroad Avenue
                                      Chester, New York 10918
                                          (845) 469-1277 (ph)
                                         (845) 469-5904 (fax)
                                             steve@tbulaw.com
                                            *Counsel for plaintiff*